1                  UNITED STATES DISTRICT COURT

2                   DISTRICT OF MASSACHUSETTS

3                              No. 1:20-cr-10098-WGY

4

5    UNITED STATES OF AMERICA

6

7    vs.

8

9    BRIAN GILBERT and STEPHANIE STOCKWELL

10

11                        * * * * * * * * *

12

13                    For Zoom Hearing Before:
                       Judge William G. Young

14

15                         Plea Change

16

17                    United States District Court
                      District of Massachusetts (Boston.)
                      One Courthouse Way

18                    Boston, Massachusetts 02210
                      Thursday, October 29, 2020

19

20                        * * * * * * * *

21

22

23           REPORTER: RICHARD H. ROMANOW, RPR
                    Official Court Reporter
                   United States District Court

24     One Courthouse Way, Room 5510, Boston, MA 02210
                    bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

 3    SETH B. KOSTO, ESQ.
         United States Attorney's Office
 4       One Courthouse Way, Suite 9200
         Boston, MA 02210
 5       (617) 748-3230
         E-mail: Seth.kosto@usdoj.gov
 6       For the United States of America

 7

 8    MIRANDA KANE, ESQ.
         Kane Kimball, LLP
 9       803 Hearst Avenue
         Berkeley, CA 94710
10       (510) 704-1400
         Email: Mkane@kanekimball.com
11       For Defendant Brian Gilbert

12

13    GAIL SHIFMAN, ESQ.
         Law Office of Gail Shifman
14       2431 Fillmore Street
         San Francisco, CA 94115
15       (415) 551-1500
         Email: Gail@shifmangroup.com
16   and
      TRACY A. MINER, ESQ.
17       Miner Orkand Siddall, LLP
         470 Atlantic Ave, 4th Floor
18       Boston, MA 02210
         (617) 273-8421
19       Email: Tminer@moslip.com
         For Defendant Stephanie Stockwell

20

21

22

23

24

25
```

```
1           P R O C E E D I N G S
2           (Begins, 3:00 p.m.)
3           THE CLERK:  Now hearing Criminal Matter 20-10098,
4    the United States of America versus Brian Gilbert and
5    Stephanie Stockwell.
6           THE COURT:  Good afternoon.  This is a hearing
7    held via our zoom platform.  Our host for this hearing
8    is Courtroom Deputy Clerk, Jennifer Gaudet.  On the line
9    is our Official Court Reporter, Rich Romanow.
10           Because this is an official proceeding of the
11   court, it is open to the press and public.  I have no
12   idea whether any members of the press or public are
13   present on the line, but if they are I must tell them
14   now that you must keep your microphones muted and
15   there's -- excuse me, and there is -- the rules of court
16   remain in full force and effect, there is no
17   rebroadcast, taping, streaming, or other transmission of
18   this court proceeding.
19           With that done, would counsel introduce themselves
20   and who they represent, starting with the government.
21           MR. KOSTO:  Good afternoon, your Honor, Assistant
22   United States Attorney Seth Kosto, K-O-S-T-O, appearing
23   on behalf of the government.
24           THE COURT:  Good afternoon, Mr. Kosto.
25           MS. MINER:  Good afternoon, your Honor, Tracy
```

1    Miner on behalf of Stephanie Stockwell, and let me

2    introduce Gail Shifman who is representing Stephanie as

3    well and will be handling this hearing.

4         MS. SHIFMAN:  Good afternoon, your Honor.

5         THE COURT:  Oh, good afternoon.  I recognize you

6    there.

7         All right.  And for Mr. Gilbert?

8         MS. KANE:  Yes, your Honor.  Good afternoon,

9    Miranda Kane on behalf of Brian Gilbert.  Mr. Gilbert is

10   present with me here and has agreed to the proceeding by

11   way of zoom.

12        THE COURT:  All right, you've anticipated me.

13        There are two things that I need to -- well

14   actually a number of things that I need to inquire of

15   your clients of, but the first one is this business

16   about zoom.  And since you've raised it, we'll ask

17   Mr. Gilbert first.

18        Mr. Gilbert, you don't -- well, one, you don't

19   have to plead guilty, and we're going to have to talk

20   about that in detail, but you don't have to proceed by

21   way of zoom.  The only way we can go forward with a

22   hearing like this is if you consent to it.  And if you

23   do, then -- and as I've said, it's an official court

24   proceeding and it -- it counts, it's in every sense a

25   valid proceeding, but you have to consent to it.

1        Now your counsel said that you and she have talked
2  this over.  Is that correct?
3        MR. GILBERT:  Yes, sir.
4        THE COURT:  And I realize I should ask counsel.
5  You have no objection if I inquire of him directly?
6        MS. KANE:  No, your Honor.
7        THE COURT:  All right.  And having talked it all
8  over, do you agree to proceed in this proceeding by way
9  of zoom?
10        MR. GILBERT:  Yes, I do.
11        THE COURT:  All right.  And to Ms. Stockwell's
12  counsel -- and I'm sorry I didn't catch your name, I
13  know Ms. Miner, but, counsel, you have no objection if I
14  talk directly to Ms. Stockwell?
15        MS. SHIFMAN:  That's correct, your Honor, I have
16  discussed this with her and she agrees to proceed by
17  zoom and I have no objection.  And just for the record
18  my name is Gail Shifman.
19        THE COURT:  Thank you, Ms. Shifman, that's my
20  fault and I apologize.
21        Ms. Stockwell, we have a number of things to
22  discuss, but this first one is do you really want to do
23  this by this zoom on-camera proceeding?  And there
24  really are two questions.
25        You've talked it all over with your attorney?

1          MS. STOCKWELL:  Yes, your Honor, I have.

2          THE COURT:  And you do want to proceed in this

3     fashion?

4          MS. STOCKWELL:  Yes, I do.

5          THE COURT:  All right.

6          The law and the regulations require that I make a

7     finding and I'll proceed now to do it.

8          Zoom proceedings are authorized under the United

9     States Cares Act passed by the Congress and regulated by

10    -- regulations issued by the United States Judicial

11    Conference.  In this district they proceed under order

12    of our Chief Judge Dennis Saylor upon unanimous vote of

13    the court.  That order requires that the individual

14    judge make a finding that it is in the interests of

15    justice so to proceed.  I do make that finding.

16         Now I understand from counsel that each of you

17    wants to tender a plea of guilty to the charges in this

18    case.  And before we go any further, let me have the

19    Clerk swear each one of you because I'm going to be

20    asking questions and the answers are under oath.  So

21    I'll turn to the Clerk.

22         THE CLERK:  Mr. Gilbert, would you please raise

23    your right hand.

24         (BRIAN GILBERT, sworn.)

25         MR. GILBERT:  Yes, I do.

1          THE CLERK:  Ms. Stockwell, would you please raise

2     your right hand.

3          (STEPHANIE STOCKWELL, sworn.)

4          MS. STOCKWELL:  Yes, I do.

5          THE CLERK:  I'm sorry, we could not hear you.

6          MS. STOCKWELL:  Yes, I do.

7          THE COURT:  Very well.

8          Now each one of you indicates that you want to

9     plead guilty to the charges against you.  Before I can

10    allow you to plead guilty, and it is up to me, I have to

11    find out certain things.

12         I have to find out that each one of you -- and

13    I've put the proceeding together, but I'm going to be

14    asking individual questions to each one of you and I'm

15    going to be listening very carefully to the answers.  So

16    let me outline in general what's going to happen.

17         I need to find out that each one of you knows what

18    you're doing, each one of you knows what you're giving

19    up, because you give up things that are terribly

20    important to you if you plead guilty.  Each one of you

21    has to understand what may happen to you if you plead

22    guilty.  And then I have to be satisfied that each one

23    of you wants to plead guilty.  Now that's the second

24    point and far more important than this zoom business.

25         You're in charge here.  Neither one of you -- I

1    see plea agreements and the like, but neither one of you

2    has to go through with it.  You don't have to plead

3    guilty.  And this is not a determination -- you're very

4    wise to talk to your attorneys, yes, talk to your

5    family, people upon whom you rely, but in the final

6    analysis this is your decision, only your decision.  And

7    I want you to know that it makes no difference to me.

8    If either one of you decides not to plead guilty, I'm

9    not angry, it doesn't mess up any afternoon, it -- all

10   it does is change how we proceed, we'll get your case

11   ready for trial, and then I'll give you a fair and an

12   impartial trial, that's guaranteed to you by the

13   Constitution.

14          And understand this, if we go to trial and you're

15   found guilty, yes, I may punish you for the crimes of

16   which you're found guilty, but never will I punish you,

17   not one day, never will I make it worse because you went

18   to trial.

19          Now, Ms. Stockwell, you understand that?

20          MS. STOCKWELL:  (Silence.)

21          THE COURT:  Somehow I see your lips move but I

22   didn't hear you.

23          MS. STOCKWELL:  I do, your Honor.

24          THE COURT:  All right.

25          And, Mr. Gilbert, do you understand that?

1          MR. GILBERT:  Yes, I do.

2          THE COURT:  And then the last thing I need to know

3     -- and I've seen a description of the particular

4     offenses, but I need to know from the government, I want

5     them to recite to me, touching on the essential

6     elements, what they think they can prove here if we went

7     to trial, and then I'll ask each one of you separately,

8     so far as it pertains to you, "Are those things true?"

9          Now while I'm asking the questions, understand

10    that you can stop at any time, all you have to do is say

11    so, that's fine, and you can talk with your lawyers, and

12    we can turn off the mics so we can go off the screen and

13    ensure, and Ms. Gaudet will ensure, that none of us can

14    hear what you say to your attorney, and that's fine.

15         Also, if I ask you a question and you don't

16    understand it, stop me, I have to ask the questions in a

17    manner that you understand.

18         So let's start with the "Do you know what you're

19    doing?"  And when I ask the individual question, I'll

20    start with Ms. Stockwell.

21         So, Ms. Stockwell, would you now -- you're sworn,

22    so would you state your full name.

23         MS. STOCKWELL:  My name is Stephanie Gail

24    Stockwell.

25         THE COURT:  And how old are you, ma'am?

```
 1          MS. STOCKWELL:  I'm 26.
 2          THE COURT:  How far did you go in school?
 3          MS. STOCKWELL:  I have a master's degree.
 4          THE COURT:  Have you ever been treated for a
 5     mental illness or mental condition of any sort?
 6          MS. STOCKWELL:  I have.
 7          THE COURT:  And would you just tell me what it is?
 8          MS. STOCKWELL:  I have autism.  I also have ADHT
 9     and depression.
10          THE COURT:  Now, um, I don't really want to get
11     into it in a clinical sense, but do you take medication
12     for these conditions?
13          MS. STOCKWELL:  I do.
14          THE COURT:  Are you taking the medication as
15     prescribed?
16          MS. STOCKWELL:  Yes.
17          THE COURT:  And how do you feel today?
18          MS. STOCKWELL:  Okay, given the circumstances,
19     thank you very much.
20          THE COURT:  And I think that's a very straight
21     answer.  I can understand nervousness.  The key thing
22     that I need to know is that you have a true
23     understanding of what's going on and the roles of the
24     different people.
25          THE COURT:  So are you clear now that, um -- she's
```

1  your attorney, and Ms. Miner, they're 100 percent in

2  your corner.  Do you understand that?

3          MS. STOCKWELL:  Yes, I do.

4          THE COURT:  And you understand the government

5  lawyer, he's the prosecutor, he's got to follow the law,

6  he's got to be fair, but he's representing the other

7  side in the charges against you.  You understand that?

8          MS. STOCKWELL:  Yes, I do understand.

9          THE COURT:  And do you understand that I'm the

10  judge and I am truly neutral, my role here this

11  afternoon is just to see that the law is followed.

12  Honestly I said this, but it's true, I don't care

13  whether you plead guilty or not, but I have to explain

14  things accurately to you.

15          Do you understand what my role is here this

16  afternoon?

17          MS. STOCKWELL:  I do, your Honor.

18          THE COURT:  Do you think you can make, truly make

19  your own decisions here about whether to plead guilty?

20          MS. STOCKWELL:  Yes, I do.

21          THE COURT:  All right.

22          Now other than what you've told me about mental

23  conditions, are you taking any other medication?

24          MS. STOCKWELL:  Um, yes.

25          THE COURT:  Do you mind telling me for what?

1          MS. STOCKWELL:  Um, I take birth control.

2          THE COURT:  All right.  But that doesn't affect

3     your ability to make your own decisions, that's right,

4     isn't it?

5          MS. STOCKWELL:  Yes, that's correct.

6          THE COURT:  All right.

7          Are you under the influence of alcohol?

8          MS. STOCKWELL:  No, I'm not.

9          THE COURT:  Are you under the influence of any

10    drug?

11         MS. STOCKWELL:  No, I am not.

12         THE COURT:  Do you know what you're charged with?

13         MS. STOCKWELL:  I do.

14         THE COURT:  Tell me.

15         MS. STOCKWELL:  I am charged with conspiracy to

16    commit cyberstalking as well as obstruction of justice.

17         THE COURT:  It isn't a test but that's right, and

18    we will go over that.

19         Now, Mr. Gilbert, I'm going to ask you the same

20    questions, but let me ask you carefully and

21    individually.

22         Will you state your full name, sir.

23         MR. GILBERT:  Brian Matthew Gilbert.

24         THE COURT:  And how old are you, sir?

25         MR. GILBERT:  52.

1          THE COURT:  How far did you go in school?

2          MR. GILBERT:  I have a bachelor's degree.

3          THE COURT:  Now have you ever been treated for any

4    mental illness or condition of some sort?

5          MR. GILBERT:  No, your Honor.

6          THE COURT:  Are you taking any medication today?

7          MR. GILBERT:  No.

8          THE COURT:  Are you under the influence of any

9    drugs?

10         MR. GILBERT:  No.

11         THE COURT:  Are you under the influence of

12   alcohol?

13         MR. GILBERT:  No.

14         THE COURT:  Do you know what you're charged with?

15         MR. GILBERT:  Yes.

16         THE COURT:  Tell me.

17         MR. GILBERT:  Conspiracy to commit cyberstalking

18   and tampering with a witness.

19         THE COURT:  Conspiracy to tamper with a witness,

20   that's right.

21         Now let me explain to both of you what it is in

22   your individual cases that the government has to prove.

23         The government has to prove here that each one of

24   you conspired.  Now while it's charged that you and

25   other people conspired together, they've got to prove

1    that each one of you separately conspired with one or

2    more of the other people whom they have charged.  And a

3    conspiracy requires them to prove three things.

4         First, it requires them to prove the knowing

5    agreement to do something that the law forbids.  It

6    doesn't require that you know the specific requirements

7    of the law, but it does require that they prove each one

8    of you individuals -- individually, knowing what you

9    were doing, agreed with one of the others, or more than

10   one, to do things, to take steps to do things that in

11   fact the law forbids being done.

12        Now a conspiracy -- you're not conspirators

13   because you happened to work together or have the same

14   employer.  You're not conspirators because you might be

15   friends.  You're not conspirators because you hung

16   around with one another.  You're not conspirators even

17   if you knew other people were getting together and doing

18   -- agreeing to do certain things the law forbids and you

19   didn't report it, you didn't do anything about it.  The

20   law requires that you, knowing what you were doing,

21   actually agree to be in on the conspiracy.

22        So a conspiracy is an agreement.  It doesn't have

23   to be in writing.  It doesn't have to be a handshake.

24   It doesn't have to be a wink or a nod.  But it's got to

25   be a genuine deal, a genuine knowing agreement between

1    you and at least one of the other people that they've

2    charged as conspirators.  That's the first thing.

3         Now the second thing is it's not just some general

4    agreement, here -- and there's two separate charges, and

5    I'll explain why.  Here on the second point, they have

6    to prove, as to each one of you individually, that the

7    deal you were in on was to do the acts which constitute

8    cyberstalking for the first count, the first charge, and

9    the deal that you were in on for the second charge was

10   to tamper with a witness.  So let me talk about those

11   specific acts.

12        "Cyberstalking" under our laws is now, in this age

13   of digital and computer communication, it is to use the

14   means of interstate commerce -- it has to be interstate

15   commerce, to engage in harassment and putting people --

16   excuse me.

17        (Phone rings.)

18        I'm here alone so you have to -- we're all remote,

19   so you have to forgive me.  And I was explaining

20   "cyberstalking."

21        -- to harass or put in fear someone by use of

22   computers and computer communications, the "cyber"

23   world.

24        "Tampering" with a witness is a separate crime and

25   that means interfering with a person, by threat,

1    coercion, intimidation, or other means -- otherwise

2    other means to tamper with that witness's willingness or

3    ability to truthfully explain, engage, and respond to

4    lawful law enforcement inquiries.  That's witness

5    tampering.

6         Now those are substantive crimes.  Neither one of

7    you is charged with a substantive crime, each one of you

8    is charged with conspiracy to do those two separate

9    substantive crimes.

10        For conspiracy, the government has to prove one

11   other thing as to each one of you.  On each count they

12   have to prove it.  They have to prove that, um, in the

13   conspiracy to cyberstalk, that one of the

14   conspirators -- not necessarily you, but one of the

15   conspirators did something to make the crime come about,

16   took some step, they call it the "overt act," to make

17   the crime come about.  They don't have to prove that the

18   crime was successful, but you have to take some overt

19   step to make the crime come about.  Actually I said that

20   wrong, not you had to do it, one of the conspirators had

21   to do it as part of the conspiracy.

22        And the same thing for tampering the witness.  Not

23   that you took the step to tamper with a witness, but one

24   of the conspirators, in a conspiracy of which you were a

25   part, took such a step to tamper with a witness.

1          Now, Ms. Stockwell, do you understand that the
2    government has to prove those three things on each of
3    the counts against you?
4          MS. STOCKWELL:  I do, your Honor.
5          THE COURT:  And Mr. Gilbert, do you understand
6    that the government has to prove those three things on
7    each of the counts against you?
8          MR. GILBERT:  Yes, I do.
9          THE COURT:  Now let's talk about your rights, and
10   again I'm going to talk generally and then I'm going to
11   ask you individual questions.
12         The document, the charging document I have before
13   me is called an information.  There's nothing suspect
14   about an information, it's a perfectly legal -- excuse
15   me.
16         (Phone rings.)
17         Excuse me again.  We were talking about your
18   rights and I was beginning to explain about an
19   information.
20         An information is perfectly fine, it can be the
21   basis of a guilty plea, it can be the basis of a trial,
22   but only if you agree.  And you have the right, on these
23   charges, serious charges, felony charges, to be
24   indicted.
25         Now what that means is that you -- the government

1   first has to put its evidence before a grand jury.  You

2   can't be there, your lawyer can't be there.  The grand

3   jury doesn't decide whether you're innocent or guilty,

4   or not guilty, all they decide is whether there's

5   probable cause to believe that you are guilty, and they

6   only hear the government's side and they only vote by

7   majority vote.  The benefit to you though is that if

8   they decide not to indict you, then the government

9   cannot -- the federal government cannot come after you

10  again on these charges.

11       Now in both cases I have signed waivers of

12  indictment, and when I come to ask the questions

13  individually, I will ask you about that.  But it appears

14  that you have waived, you've given up your rights to be

15  indicted.

16       Well here are other rights that you have.  You

17  have the right to a fair and an impartial trial in, um,

18  each of your cases, a trial before a jury -- not a grand

19  jury, but a trial jury, of at least 12 people.  They

20  have to agree unanimously, beyond a reasonable doubt,

21  that you've committed these charges or any one of these

22  charges.

23       At that trial the government bears its burden of

24  proof and you have the right -- it never shifts to you,

25  you have the right to confront the witnesses against

1    you.  That means that you'll be right there in the
2    courtroom, you can see the witnesses as they testify,
3    you, um, hear them testify, but far more important, your
4    lawyers can ask them questions, can cross-examine them,
5    can call witnesses on your own behalf, you can testify
6    on your own behalf, your lawyers can make arguments on
7    your behalf.  And if you plead guilty, none of those
8    things will happen.  But of course you don't have to do
9    any of those things.
10          And that implicates another right.  You can be
11   completely silent, completely silent, and to the extent
12   you're silent, I'm going to tell the jury, if you go to
13   trial in this case, you are innocent people, that's --
14   those are the words I'm going to use.  I'm going to
15   gesture to you and I'm going to say "She's innocent,"
16   and as to Mr. Gilbert, "He's innocent," and it's up to
17   the government to prove, beyond a reasonable doubt, that
18   you are guilty.
19          Now I'm not just talking here, these things apply
20   to me as well.  I don't -- it's not true that I don't
21   know anything about this case, I do know something about
22   the case because I've read the legal papers and I've
23   accepted the guilty plea of a couple other people, but
24   that's not evidence against you.  As to you, this is the
25   first time we've ever met, I don't know you, and insofar

1    as -- I hear you say you want to plead guilty, but

2    insofar as mentally I can do it, I take you as innocent.

3          Now one other thing.  And looking at these plea

4    agreements I see that in each of your cases there are

5    what the court, under the sentencing guidelines, we call

6    "enhancements," that is particular things that, um, the

7    government says it can prove which would make the

8    sentencing range -- it's advisory, I don't have to

9    follow it, but I certainly make an attempt to, but that

10   would make your sentence more severe.  As to each one of

11   you, the government says that they can prove these

12   things and in this session of the court, as I understand

13   the Constitution of the United States, I make them prove

14   them at the trial on evidence beyond a reasonable doubt,

15   and I wouldn't count any of these things against you

16   unless either it gets proved at trial or -- excuse me,

17   or you admit it here in the guilty plea.

18         So again starting with you, Ms. Stockwell, and

19   talking first about the waiver of the indictment, have

20   you talked all of this over with Ms. Shifman, waiving

21   the indictment?

22         MS. STOCKWELL:  Yes.

23         THE COURT:  And you understand what an

24   "indictment" is as I've explained it?

25         MS. STOCKWELL:  Yes, I do.

1      THE COURT:  And is this your signature here on

2 this document?

3      MS. STOCKWELL:  Yes, it is.

4      THE COURT:  And in fact you waive indictment, is

5 that right?

6      MS. STOCKWELL:  Yes, I do.

7      THE COURT:  Now as to these other things -- that

8 now I've been talking about, the things that go along

9 with the trial and the possible proof of an enhancement.

10 You understand you have these rights, correct?

11      MS. STOCKWELL:  I do.

12      THE COURT:  If you plead guilty, they're all gone.

13 We're never going to have a trial.  We'll never get to

14 see the witnesses.  But you can still be silent until I

15 sentence you, you don't ever have to say anything

16 against yourself.  But if I sentence you on these crimes

17 and for some reason somebody goes to trial or if the

18 government is doing further inquiries within the company

19 or something about other people, you know once I've

20 sentenced you, you have to tell what you know about

21 these specific crimes, your involvement in these

22 specific crimes, because there's no Fifth Amendment

23 privilege because you're convicted, you're guilty.

24      You understand?

25      MS. STOCKWELL:  I understand that, your Honor.

```
 1              THE COURT:  All right.
 2              Now Mr. Gilbert, the same questions starting with
 3        the indictment.
 4              I see what appears to be the waiver of the
 5        indictment.  You've talked all this over with your
 6        attorney?
 7              MR. GILBERT:  Yes, I do.
 8              THE COURT:  You understand what your rights are to
 9        be indicted?
10              MR. GILBERT:  Yes.
11              THE COURT:  And I see -- is this your signature on
12        this waiver?
13              MR. GILBERT:  Yes, it is.
14              THE COURT:  And I understand that after talking
15        with your attorney you give up the right to be indicted
16        and you'll deal with the information, is that correct?
17              MR. GILBERT:  That is correct.
18              THE COURT:  All right, I find both, knowingly,
19        intelligently, and voluntarily, waive indictment.
20              Now talking about the trial.  All these rights
21        that go along with the trial as well as in this session,
22        your right to make the government prove these
23        enhancements.  You understand that if you plead guilty,
24        you've given all that away?
25              MS. KANE:  Your Honor, with respect to the
```

1   sentencing enhancement -- and this is Miranda Kane,

2   there is one factual assertion in the sentencing

3   enhancement that we're reserving the right to argue at

4   the time of sentencing.  I just wanted to make sure

5   that's clear.

6        THE COURT:  I appreciate your saying that, and

7   let's be clear, because the way I explain it, I'm giving

8   him a right to a jury trial.  But as I understand you're

9   saying to me, he'll give up the jury trial on that

10  enhancement even though you don't admit it -- and we're

11  not going to have you admit it here, and the way we'll

12  handle that is by argument at sentencing.  Is that

13  correct?

14       MS. KANE:  Thank you, that's the clarification I

15  wanted to make clear on the record, and I'll turn it

16  back to Mr. Gilbert.

17       THE COURT:  Well not yet because I want you to

18  tell me what enhancement are we talking about?

19       MS. KANE:  And the enhancement that we're

20  specifically reserving on is the, um, the distribution,

21  I think it's the sophisticated means -- and I don't have

22  the exact number in front of me, but I can pull it up.

23  Sorry.

24       THE COURT:  That's all right.

25       (Pause.)

1          MR. KOSTO:  Your Honor, I have the plea agreement

2     available if at any point you'd like me to help you.

3          MS. KANE:  Yes, Mr. Kosto, if you don't mind just

4     point us -- tell us the exact section -- I'm scrolling

5     through it to find the place, to make sure that I am

6     referencing it correctly.

7          MR. KOSTO:  The government's understanding is that

8     what Mr. Gilbert has reserved the right to argue at

9     sentencing is that the victim group should not receive

10     an enhancement under the sentencing guidelines for,

11     quote, "a pattern of activity involving threatening and

12     harassing the parties."  We're largely in agreement on

13     the facts of what happened, but he'll be making an

14     argument as to whether those facts constitute a pattern

15     of activity involving threatening and harassing under

16     USSG Section 2(a)(6.2)(b)(1).

17          THE COURT:  Thank you.

18          And Ms. Kane --

19          MS. KANE:  That's my understanding.

20          THE COURT:  And you agree with that.  So I just --

21     one final thing on this.

22          It's not that we're going to have a jury-waived

23     trial on this, what we're going to do is argue the

24     application of the language of the enhancement to

25     generally-agreed facts and you're not admitting the

1  facts, is that correct, that's what you're going to do

2  at sentencing?

3          MS. KANE:  Yes, your Honor.

4          THE COURT:  Okay, fine.

5          Now --

6          MS. SHIFMAN:  Your Honor, with regard to

7  Ms. Stockwell, that statement stating a sentencing

8  enhancement will also be argued at sentencing and is

9  encompassed in the plea agreement.

10          THE COURT:  And I appreciate that.  So -- but --

11  so I understand the procedure, Ms. Shifman, we're not

12  going to have a jury-waived trial on this, I'm going to

13  -- you're not going to admit it, we're going to -- well

14  she's not going to admit it, we'll argue at sentencing

15  the application of that enhancement to the facts, is

16  that pretty much it?

17          MS. SHIFMAN:  That's correct, your Honor.

18          THE COURT:  Very well.

19          All right.  Now, um -- well let's go back.

20          MS. KANE:  I think I interrupted you, your Honor,

21  when you were asking Mr. Gilbert if he was going to

22  waive his rights --

23          THE COURT:  And you have me at the right spot,

24  Ms. Kane, thank you.

25          So, Mr. Gilbert, sticking with you -- and I

1    appreciate your lawyer clarifying that, and when we let

2    the government recite things, they're not going to

3    recite it in a way that suggests that you agree to that

4    particular enhancement, and I -- and my mind is

5    specifically open on that.

6         But with that exception, you agree that all your

7    rights are gone -- well again you can be silent until I

8    sentence you, but once I sentence you, then your right

9    to be silent to that -- about your criminal involvement

10   here, that's gone, and if they're investigating other

11   people or, um, further investigating this conspiracy,

12   you have to say what you know.  You know that?

13        MR. GILBERT:  I understand, sir.

14        THE COURT:  Very well.  Now let's talk about what

15   may happen to each one of you.

16        I understand there's a plea agreement here, but

17   now I'm going to turn to the government, not because I'm

18   listening only to the government, but at sentencing I

19   will listen to the government, but I'll listen to each

20   one of your attorneys and I'm going to listen to you if

21   you wish to say anything.  By while we're at this stage,

22   while you're each still innocent, here's what I want the

23   government to tell me.

24        As I understand the Constitution of the United

25   States, the highest sentence I could impose upon each

1    one of you is the top of the sentencing guideline range

2    without regard to any discount for pleading guilty, or

3    other discount, I see one here for minor role and the

4    like, there may be other discounts.  But I want the top

5    without any discount at all.

6         Then I want to know the range -- and we're going

7    to hear the government's range now.  Even though in both

8    cases you're reserving the matter to be argued at

9    sentencing, I want you to hear the range if everything

10   goes the government's way.

11        Do you understand I'm not bargaining with you, I'm

12   not -- I don't have to follow that range, though it

13   certainly guides me, that these are sentencing

14   guidelines, and I want to hear that.  And then because

15   we have plea agreements here, I want to hear what the

16   government proposes to recommend in each case.

17        So going defendant by defendant, counsel, can you

18   respond to my questions?

19        MR. KOSTO:  Yes, I can, your Honor.  Shall I start

20   with Ms. Stockwell?

21        THE COURT:  That's fine.

22        MR. KOSTO:  So in Ms. Stockwell's case, the top of

23   the advisory guidelines range, without respect to any

24   adjustment for acceptance of responsibility, um, would

25   be 51 months -- a 41-to-51-month range, the top of which

1   is 51 months.  The plea agreement contemplates, in the

2   government's view, that the guideline sentencing range

3   will be 30 to 37 months and that the government's

4   recommendation, without regard to the resolution of the,

5   um, reserved legal issue, as to Ms. Stockwell, will be

6   24 months.

7           THE COURT:  Thank you.

8           MR. KOSTO:  Shall I move on to Mr. Gilbert?

9           THE COURT:  No, that's exactly right.  And now

10  Mr. Gilbert.

11          MR. KOSTO:  So in Mr. Gilbert's case, the top of

12  the advisory sentencing range after trial would be 63

13  months, the range being 51 to 63 months.  As

14  contemplated by the plea agreement, if the Court rules

15  in the government's favor on the enhancement that we've

16  been discussing, the guideline sentencing range will be

17  37 to 46 months, and the government's recommendation at

18  sentencing will be 37 months in custody.  If the Court

19  rules in favor of Mr. Gilbert on the disputed

20  enhancement, the government's sentencing recommendation

21  as to Mr. Gilbert will be 30 months.

22          THE COURT:  In other words, you'll be low end

23  however that works out?

24          MR. KOSTO:  We tried to take that possibility into

25  account, your Honor.

1            THE COURT:  I understand.  And that answered my

2       question.

3            MS. SHIFMAN:  Your Honor?  Sorry.

4            THE COURT:  Yes.

5            MS. SHIFMAN:  With regard to Ms. Stockwell, um,

6       the plea agreement contemplates that the government's

7       recommendation would be for not more than 24 months.

8       It's not a flat 24.

9            MR. KOSTO:  That is correct, your Honor, I

10      misspoke.

11           THE COURT:  I appreciate that.

12           All right.  So, Ms. Stockwell, this is not the

13      first time you've heard these numbers, I take it?

14           (Silence.)

15           THE COURT:  Ms. Stockwell?

16           MS. STOCKWELL:  It is not.

17           THE COURT:  So this is terribly important to you.

18      as I read the Constitution, if you plead guilty, I can

19      send you to prison for 51 months.  Do you understand

20      that?

21           MS. STOCKWELL:  Yes, I understand that.

22           THE COURT:  And the Sentencing Commission, these

23      guidelines that at least they're a starting point for

24      where I might sentence, they suggest, if things go the

25      government's way here -- and we don't know, but if

1    things go the government's way, they suggest a sentence

2    of 30 to 37 months, that's 2 1/2 years to a month over 3

3    years.

4           Do you understand that?

5           MS. STOCKWELL:  Yes, I understand, your Honor.

6           THE COURT:  And the government -- now you've made

7    your agreement with the government and so if you go

8    through with it, the government has to do what it's

9    supposed to do under the agreement, and they are going

10   to say not more than 2 years in prison.

11          You understand that?

12          MS. STOCKWELL:  Yes, I understand.

13          THE COURT:  But you have to be very clear.  If you

14   plead guilty, I'm sentencing judge and I don't have to

15   follow it, I could go lower -- I could go lower than 24,

16   and you're saying well not more than 24, but I could go

17   up all the way to 51 months.  Do you understand that?

18   That's a lawful sentence in your case.

19          MS. STOCKWELL:  Yes, I understand that, your

20   Honor.

21          THE COURT:  And again sticking with you, um, other

22   than the plea agreement that I've seen here, do you have

23   any agreement or any promise from anyone to get you to

24   plead guilty?

25          MS. STOCKWELL:  No, I do not.

1          THE COURT:  Anyone threaten you with anything to
2     get you to plead guilty?
3          MS. STOCKWELL:  No.
4          THE COURT:  This is an alleged conspiracy.  Are
5     you covering up for someone else by pleading guilty
6     yourself?
7          MS. STOCKWELL:  No, I'm not.
8          THE COURT:  You know that if you're not a citizen
9     of the United States, conviction of these crimes may
10    have the consequence of your being deported from the
11    United States, denied naturalization under the laws of
12    the United States, denied admission to the United
13    States.  Do you know that?
14         MS. STOCKWELL:  Yes, I understand that.
15         THE COURT:  If you plead guilty to these crimes,
16    then never again will you be permitted -- because these
17    are felonies, so you can never again possess a firearm
18    or ammunition.
19         You understand that?
20         MS. STOCKWELL:  Yes, I understand.
21         THE COURT:  Have you had enough time to talk all
22    this over with your attorneys?
23         MS. STOCKWELL:  Yes, I have.
24         THE COURT:  Do you think they've been good
25    attorneys for you, gotten for you those things which are

1  your rights under the law?

2          MS. STOCKWELL:  Yes, I do.

3          THE COURT:  Are you satisfied with your attorneys?

4          MS. STOCKWELL:  Yes, I am.

5          THE COURT:  Do you still want to plead guilty?

6          MS. STOCKWELL:  Yes, I do.

7          THE COURT:  Why?

8          MS. STOCKWELL:  Because I am guilty of the

9  offenses.

10         THE COURT:  Very well.

11         Now, Mr. Gilbert, in your case, again as I read

12 the Constitution -- and I understand your attorney can

13 challenge these things, but that's why I turned to the

14 government's attorney to hear what he had to say.  If

15 these things are right, I can send you to prison for 63

16 months -- 5 years and 3 months.

17         Do you understand that?

18         MR. GILBERT:  Yes.

19         THE COURT:  And the range that will be suggested

20 to me, if things go the government's way on this

21 disputed point, is 37 to 46 months in prison.

22         Do you understand that?

23         MR. GILBERT:  Yes.

24         THE COURT:  And if things go your way, the range

25 will be 30 to 37 months.

1          You understand that?

2          MR. GILBERT:  Yes.

3          THE COURT:  In each case -- and you've got your

4    deal with the government, they will recommend the low

5    end.  The low end, if things go their way, they'll

6    recommend 37 months.  If things go your way, they'll

7    recommend 30 months -- 2 1/2 years in prison.

8          Do you understand that?

9          MR. GILBERT:  Yes, I do.

10         THE COURT:  And again I'm not bound by these

11   numbers, I'm not bound by the recommendation, I will

12   hear your counsel's recommendation, I'll listen to you.

13   So I could go lower.  But you must understand that I

14   could go higher up to 63 months.

15         Do you understand that?

16         MR. GILBERT:  Yes, I do, sir.

17         THE COURT:  Now other than this plea agreement,

18   and that is a promise by the government, has anyone

19   promised you anything to get you to plead guilty?

20         MR. GILBERT:  No.

21         THE COURT:  Are you covering up for someone else,

22   has anyone threatened you with anything to get you to

23   plead guilty?

24         MR. GILBERT:  No.

25         THE COURT:  Are you covering up for someone by

1    pleading guilty?

2         MR. GILBERT:  No, I'm not.

3         THE COURT:  Do you know that if you're not a

4    citizen, conviction of these crimes may have the

5    consequence of your being deported, denied

6    naturalization, denied admission to the United States?

7         MR. GILBERT:  I understand.

8         THE COURT:  These are felonies.  If you're

9    convicted of these crimes, you can never again have a

10   firearm or ammunition.

11        You understand that?

12        MR. GILBERT:  Yes, I do.

13        THE COURT:  Have you had enough time to talk all

14   this over with your attorney?

15        MR. GILBERT:  Yes, I have.

16        THE COURT:  Are you -- do you think they've done a

17   good job -- well, it's Ms. Kane.  Do you think she's

18   done a good job for you, gotten you those things that

19   are your rights here under the law?

20        MR. GILBERT:  Yes, I think she's done a good job.

21   Thank you.

22        THE COURT:  Are you satisfied with her

23   representation of you?

24        MR. GILBERT:  Yes.

25        THE COURT:  Do you still want to plead guilty?

```
 1          MR. GILBERT:  Yes, sir.

 2          THE COURT:  Why?

 3          MR. GILBERT:  Because it's the right thing to do

 4    and, um, I made a mistake and I need to own up to it.

 5          THE COURT:  Well these crimes are not "mistakes,"

 6    there have to be knowing agreements to do acts that the

 7    law makes criminal.  That isn't a mistake.

 8          You understand that?

 9          MR. GILBERT:  I do understand.

10          THE COURT:  Because if it were just a mistake, um,

11    you can't be found guilty, they require specific intent

12    to do acts that the law makes criminal.

13          You're clear on that?

14          MR. GILBERT:  Yes, sir.

15          THE COURT:  And you want to plead guilty here?

16          MR. GILBERT:  Yes, sir.

17          THE COURT:  All right.  I'm going to turn to the

18    government briefly and have them just touch on those

19    matters that are essential elements of the case without

20    regard to the disputed facts, that matter we'll reserve

21    until the time of sentencing.  Each one of you listen to

22    it because I'm going to ask each one of you, as it

23    pertains to you, do you understand it and whether the

24    recitation is true.

25          Counsel.
```

 1          MR. KOSTO:  Thank you, your Honor, and I will

 2    steer clear of the question of a pattern of harassment

 3    for the recommendation.

 4          THE COURT:  All right.

 5          MR. KOSTO:  Had the case proceeded to trial the

 6    United States would have proven beyond a reasonable

 7    doubt each of the elements of the two charged offenses

 8    in the information through, among other evidence,

 9    witness testimony, including the testimony of witnesses

10    who are cooperating with the government's investigation,

11    through physical evidence, through electronic

12    communications both to the victims and between and among

13    the co-conspirators, as well as to and from

14    third-parties, and business records.

15          And that evidence would show that between

16    approximately August 5th, 2019 and August 23rd, 2019,

17    the defendants, Mr. Gilbert and Ms. Stockwell, who I'll

18    refer to together today as "the pleading defendants,"

19    along with defendants Veronica Zea and Stephanie Popp,

20    to whom the Court has taken a guilty plea, and

21    separately-charged co-conspirators Jim Baugh, David

22    Harville, Philip Cook, and others, all employees or

23    contractors at eBay, Inc., the multinational eCommerce

24    company, agreed to engage in a stalking campaign

25    targeting a husband and wife who live in Natick

1  Massachusetts, they're identified here as "Victim 1" and

2  "Victim 2," and to tamper with witnesses to the criminal

3  investigation of that harassment that followed.

4      The campaign targeted Victim 1 and Victim 2, the

5  evidence would show, through their roles in publishing a

6  newsletter that reported on issues of interest to people

7  who sold products on eBay.  Senior executives at eBay

8  were frustrated with the newletter's tone and its

9  content and with the tone and content of comments

10  underneath the newsletter's articles.  A stalking

11  campaign arose from communications between those

12  executives and Jim Baugh, who was eBay's Senior Security

13  Officer at the time.

14      The campaign, which was intended to intimidate and

15  harass the victims, included the sending of threatening

16  communications to the victims over Twitter, which the

17  evidence would show is an instrumentality of interstate

18  commerce, in ordering unwanted and disturbing deliveries

19  to the victim's home here in Massachusetts, and Ms. Zea,

20  Mr. Harville, Mr. Baugh, and Ms. Popp's traveled to

21  Natick to surveil the victims in their home and

22  communities.

23      The evidence would show the deliveries ordered

24  included -- to the victim's home included a book on

25  "Surviving the Death of a Spouse," a bloody pig mask,

1   um, the attempted order of a fetal pig, a funeral

2   wreath, and live insects.  The harassment also featured

3   Craig List posts inviting the public for sexual

4   encounters or estate sales at the victim's home.

5         Offending Twitter messages were written to Victim

6   1 and sometimes addressed to her husband, Victim 2, as

7   if they had been sent by eBay sellers who were unhappy

8   with the victim's coverage in the newsletter.  Some of

9   these messages posted the victim's address publicly on

10  the internet and threatened to visit the victims at

11  their home.

12        An August 22nd, 2019 message stated, for example,

13  that newsletter, "20 years of lies and destroying

14  families, don't be proud of that, you worthless bitch.

15  I will destroy your family and business to see how you

16  like it," slash Elei_Tui, "When are we going to visit

17  her in Natick?"

18        Mr. Baugh intended for the harassment and

19  intimidation to distract the victims from publishing the

20  newsletter, to change the newsletter's coverage of eBay

21  and ultimately to enable eBay to contact the victims to

22  offer assistance with the harassment, what the

23  government has called a "White Knight Strategy."  The

24  White Knight Strategy would earn goodwill with the

25  victims such that they might help eBay learn the

1  identify of them and discredit "Filemaster," who was an

2  anonymous online persona who frequently posted negative

3  comments about eBay underneath the newsletters's

4  articles.

5       The evidence would show that Mr. Baugh,

6  Mr. Harville, and Ms. Vea, also travelled to Natick on

7  August 15th, 2019.  Mr. Baugh and Mr. Harville intended

8  to install a GPS tracking device on the victim's family

9  car when it was safely locked in the victim's garage.

10  The victim spotted the surveillance team on August 16th,

11  which led them to call the Natick Police Department in

12  fear.  Ms. Vea, Mr. Baugh, and Ms. Popp, would arrive in

13  Boston to replace Mr. Harville on the surveillance team

14  on August 17th, and continued that surveillance even

15  after having been spotted by the victims.

16       The NPD, which was investigating the deliveries,

17  the threats, and the surveillance, connected Ms. Vea and

18  Mr. Harville to two rented cars and then to eBay to whom

19  they reached out for assistance.  When the pleading

20  defendants and Ms. Popp, Ms. Vea, Mr. Baugh, Mr. Gilbert

21  -- um, excuse me, Mr. Cook and Mr. Harville, learned

22  that the NPD was making inquiries, they agreed to

23  prevent the NPD from learning about the harassment

24  campaign and with the support of Ms. Stockwell,

25  Ms. Popp, Mr. Cook, Mr. Baugh, and others, Mr. Gilbert

1    made false statements directly to the NPD.  Several of

2    the co-conspirators also made false statements to

3    internal investigators for eBay who were attempting to

4    respond to the NPD's request for assistance.  All the

5    co-conspirators also either deleted digital evidence

6    related to the cyberstalking campaign or fabricated

7    records intended to throw the NPD off the trail.  As

8    these events were unfolding in late August of 2019, the

9    NPD referred the victim's harassment matter to the

10   Federal Bureau of Investigation's Boston field office.

11        As I've said previously, your Honor, although not

12   every co-conspirator was aware of every act taken in

13   further of the cyberstalking campaign, the evidence

14   would show that each co-conspirator, including the

15   pleading defendant, agreed to harass or intimidate the

16   victims and to the use of facilities of interstate

17   commerce to engage in a course of conduct that caused or

18   would reasonably be expected to cause substantial

19   emotional distress to Victims 1 and 2.

20        As to each of the pleading defendants today, your

21   Honor, with respect to overt acts in furtherance of a

22   conspiracy, on or about the dates below the pleading

23   defendants below took these steps described in

24   furtherance of the conspiracies charged in Counts 1 and

25   2 of the information.

1            As to Mr. Gilbert, on August 6th, 2019, he met

2     with Mr. Baugh, Mr. Cook, and Ms. Popp, at eBay

3     headquarters to plan what the government's called "the

4     White Knight Strategy," a series of increasingly

5     harassing messages that would culminate in Mr. Gilbert's

6     call to the victims to offer assistance with the

7     harassment.

8            On August 14th, 2019, Mr. Gilbert met with

9     Mr. Baugh, Mr. Harville, Ms. Vea, and Ms. Popp, at eBay

10    headquarters again to plan a surveillance trip to Natick

11    for the installation of a GPS tracker on the victim's

12    car.

13           On August 20th, 2019, in a WhatsApp group created

14    to vet the content of the anonymous messages intended

15    for Victim 1, Mr. Gilbert proposed to Mr. Cook,

16    Ms. Popp, and Mr. Baugh, the creation of more anonymous

17    Twitter accounts in support of, quote, "our cause," and

18    proposed specific communications criticizing the

19    newsletter to be sent over those new anonymous accounts.

20           The same day, at 9:39 p.m., Mr. Gilbert sent the

21    WhatsApp messages that stated, quote, "The more I think

22    about it, I do think we should bring dossiers on the

23    victims to the PD, definitely want to make them look

24    crazy."

25           At 2:30 the following day, Thursday, August 21st,

1    2019, Mr. Gilbert contacted the victims to offer

2    assistance with the harassment in connection with the

3    White Knight Strategy.  He reported back in a WhatsApp

4    message to Mr. Baugh, Ms. Popp, and Mr. Cook, that

5    "they," referring to the victims, "are totally rattled."

6         At 4:33 p.m. that day, he sent another WhatsApp

7    message to the same group stating, "We need to pin the

8    deliveries to a POI, or a "Person Of Interest," in the

9    San Jose, Santa Clara area after learning that the

10   Natick Police Department was investigating the use of a

11   prepaid debit card in the San Jose, Santa Clara area.

12        Finally as to Mr. Gilbert, on August 22nd, 2019,

13   he met with members of the NPD, including a detective

14   who was investigating the harassment, and falsely stated

15   that Ms. Vea and Mr. Harville had been in Boston to

16   attend a software development conference.

17        As to Ms. Stockwell, on August 5th, 2019, acting

18   at Mr. Baugh's direction, she purchased at a Best Buy in

19   Santa Clara California, using cash, a laptop for use in

20   harassing the victims.

21        On August 9th, 2019, she used an anonymous e-mail

22   account created for the purpose of ordering online live

23   spiders for delivery to the victim's home.

24        On August 17th, 2019 at approximately 4:30 in the

25   morning Eastern time, she used a prepaid debit card to

1    purchase a late-night pizza delivery to the victim's

2    home.

3           On August 17th, 2019 she used her eBay-issued cell

4    phone to research Boston area late-night drain repair

5    and adult entertainment services in connection with

6    possible harassing activities.

7           On August 21st, 2019, again acting at Mr. Baugh's

8    direction, she prepared an eBay "Person Of Interest," or

9    POI report for the Bay Area, a list that was to be given

10   as potential leads to the NPD to deflect the NPD's

11   attention from the fact that it was eBay employees who

12   had used the debit cards to make the harassing

13   purchases.

14          Your Honor, with those, um -- with those facts the

15   government would respectfully submit that the Court

16   would have an adequate factual basis to find that the

17   defendants could knowingly and voluntarily plead guilty

18   to the offenses charged in the information.

19          THE COURT:  Thank you.

20          Ms. Stockwell, did you hear what counsel had to

21   say?

22          MS. STOCKWELL:  Yes, I did, your Honor.

23          THE COURT:  Do you understand it?

24          MS. STOCKWELL:  I do.

25          THE COURT:  Now as to those things that pertain to

1    you and of which you had knowledge, are all those things

2    true?

3            MS. STOCKWELL:  Yes, they are.

4            THE COURT:  Very well.

5            And, Mr. Gilbert, did you hear what government

6    counsel had to say?

7            MR. GILBERT:  Yes, sir.

8            THE COURT:  And as it pertains to you and those

9    matters about which you have knowledge, are all those

10   things true?

11           MR. GILBERT:  Yes, sir.

12           THE COURT:  All right.  I do find that

13   Ms. Stephanie Stockwell and Mr. Brian Gilbert,

14   knowingly, intelligently, and voluntarily, exercised

15   their right to plead guilty and the Clerk may accept the

16   plea.

17           Well actually there's one more right here that I

18   should mention.

19           Going back to the days -- you have not yet pleaded

20   to this information so you're being arraigned on this

21   information, and, um, in the days when many people could

22   not read, you have a right to have the information read

23   in open court.

24           I assume you've read it and are not particularly

25   interested in having it -- well it's not for me to say,

1    you have that right.  So let me ask you and follow the

2    same procedure.

3            Ms. Stockwell, do you want the Clerk to read the

4    information before you plead to it?

5            MS. STOCKWELL:  No, I don't, your Honor.

6            THE COURT:  All right, she waives the reading of

7    the information.

8            And, Mr. Gilbert, do you want her to read the

9    information?

10           MR. GILBERT:  No, your Honor.

11           THE COURT:  He waives the reading of the

12    information.

13           Now I'm going to turn to Ms. Gaudet and as to each

14    one of you, in the appropriate legal fashion, she's

15    going to arraign you, and she's going to say "How do you

16    plead to this information, guilty or not guilty?"  If

17    you don't want to go through with it, I mean that's

18    fine, I've said that throughout, just tell her "No" or

19    tell her "Not guilty."  But if you plead guilty, then

20    you're guilty, no taking it back or starting over.

21           Very well.  The Clerk may arraign each of the

22    pleading defendants.

23           THE CLERK:  Mr. Brian Gilbert and Ms. Stephanie

24    Stockwell, the United States Attorney has charged you

25    both in a two-count information, within Count 1,

1   conspiracy to commit cyberstalking in violation of Title

2   18, United States Code, Section 371.  In Count 2,

3   conspiracy to tamper with a witness, in violation of

4   Title 18, United States Code, Section 371.

5        Mr. Brian Gilbert, how do you now plead to Counts

6   1 and 2, guilty or not guilty?

7        MR. GILBERT:  Guilty.

8        THE COURT:  Ms. Stephanie Stockwell, how do you

9   now plead to Counts 1 and 2, guilty or not guilty?

10        MS. STOCKWELL:  Guilty.

11        THE COURT:  Thank you.

12        All right.  The status of bail on the part of the

13   government?

14        (Pause.)

15        THE CLERK:  You're on mute, Seth.

16        MR. KOSTO:  Yes, I apologize.

17        The probation officer has proposed a series of

18   conditions of continued release for each of the

19   defendants that are acceptable to the government.

20        THE COURT:  And, um, Ms. Shifman, are those terms

21   acceptable to you?

22        MS. SHIFMAN:  They are, your Honor.

23        THE COURT:  And Ms. Kane?

24        MS. KANE:  Yes, they're acceptable.

25        THE COURT:  All right.  And I'll let the Clerk

1   announce a time for sentencing.

2        THE CLERK:  Sentencing for Ms. Stockwell is March

3   11th at 2:00 p.m.

4        THE COURT:  Let's pause there.

5        Is that satisfactory to the government?

6        MR. KOSTO:  Yes, it is, your Honor.  Thank you.

7        THE COURT:  And Ms. Shifman?

8        MS. SHIFMAN:  Yes, your Honor, that's fine.  Thank

9   you.

10        THE COURT:  All right.

11        And as to Mr. Gilbert?

12        THE CLERK:  May 6th at 2:00 p.m.

13        THE COURT:  And, Ms. Kane, is that -- or the

14   government, is that satisfactory to the government?

15        MR. KOSTO:  It is, your Honor.

16        THE COURT:  And, Ms. Kane, is that satisfactory to

17   you?

18        MS. KANE:  Yes, your Honor.

19        THE COURT:  Very well.  So those dates, at

20   2:00 p.m., Eastern Standard Time or Eastern Daylight

21   Savings Time, will be the, um, sentencing dates and

22   times.  And I think we may recess.  We'll recess.

23        (Ends, 4:00 p.m.)

24

25

1                    C E R T I F I C A T E

2

3

4        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

5    hereby certify that the forgoing transcript of the

6    record is a true and accurate transcription of my

7    stenographic notes, before Judge William G. Young, on

8    Thursday, October 29, 2020, to the best of my skill and

9    ability.

10

11

12   /s/ Richard H. Romanow 05-3-21
     _____
13   RICHARD H. ROMANOW  Date

14

15

16

17

18

19

20

21

22

23

24

25