UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 20-CR-10098-WGY |
| | ) | |
| BRIAN GILBERT, | ) | |
| | ) | |
| Defendant. | ) | |

<u>SENTENCING MEMORANDUM OF THE UNITED STATES</u>

Brian Gilbert knew better.   As a retired police captain with 27 years of law enforcement experience, he was well positioned to appreciate the impact of eBay's harassment and intimidation campaign targeting David and Ina Steiner.   He had sworn the familiar oath to "well and faithfully" discharge the duties of his office, and to defend the United States and California constitutions.   As a private citizen, however, the defendant turned his back on that oath. Instead of protecting the Steiners, he joined others at eBay to plan the jaw-dropping harassment that filled Ina Steiner's inbox.   He later presented himself to the Steiners at the peak of that harassment as an ally who could help them, all the while knowing that eBay's Jim Baugh was the architect of their nightmare.   He then obstructed the Natick Police Department ("NPD") investigation by lying directly to police detectives, brainstorming ways to derail the NPD's efforts, and deleting instant messages that evidenced his and his co-conspirators' conduct.

In many respects, the defendant was among the more culpable of the seven convicted co-defendants.   He had visibility at various times into the threats, the deliveries, and the surveillance that made up the campaign.   He also had life and professional experience that distinguished him from Jim Baugh's younger reports—experience that should have led him to stand up to Baugh and to stop the campaign before it started.   Even worse, other co-conspirators reported taking comfort in the involvement of two former police officers in the campaign.

Under ordinary circumstances, the government would—consistent with its obligations under a plea agreement with the defendant—recommend a custodial sentence within the Guidelines Sentencing Range applicable to his crimes.   According to the Presentence Investigation Report ("PSR"), that advisory sentencing range is between 37 and 46 months in prison, a fine of between $15,000 and $150,000, and a three-year term of supervised release.

But Brian Gilbert's circumstances are far from ordinary.   His medical records indicate that around the time of his October 2020 guilty plea, he was diagnosed with Stage 3B colorectal cancer.   (PSR ¶ 169; Docket Nos. 154, 155 & Exh. B. (under seal)).   Despite repeated medical and surgical interventions since then, that cancer has spread through his liver and into his diaphragm.   (PSR ¶ 171a; Docket Nos. 154, 155 & Exhs. A & B (under seal)).   The records further reveal that his metastasized cancer is now inoperable, and that the only care available to him is an experimental clinical trial.   (PSR ¶ 171a; Docket Nos. 154, 155 & Exhs. A-C (under seal)).

Nothing can diminish the seriousness of the defendant's crimes, or the devastating and irreversible impact he had on David and Ina Steiners' lives.   While a jail sentence might well underscore the seriousness of the defendant's offense, similarly situate him to his imprisoned co-defendants, and deter future corporate misconduct, that sentence would fail to account for Brian Gilbert's grave diagnosis.   Indeed, given that prognosis, the defendant would be an immediate candidate for compassionate release from the Bureau of Prisons.   *See* USSG § 1B1.13(b)(1)(A) (Sentencing Guidelines policy statement noting that "extraordinary and compelling reasons" warranting sentence reductions exist when "the defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)", including "metastatic solid

tumor cancer").

For all of these reasons and those stated below, the United States respectfully requests that the Court sentence the defendant to time served; to one year of supervised release with the special condition that he have no contact with either Ina or David Steiner; and to pay the required $200 special assessment and a $20,000 fine, comparable to the fines imposed on co-defendants Jim Baugh ($40,000), David Harville ($20,000), and Philip Cooke ($15,000).

I.     Background

In August 2019, the defendant was 51 years old, serving as eBay's Senior Manager of Special Operations on eBay's Global Security Team.   (PSR ¶ 7(f)).   eBay paid him $185,000 per year, on top of substantial retirement income from his police career.   (¶¶ 7(f), 189).   Both the defendant and his friend Philip Cooke, another former Santa Clara police captain, reported through an eBay director to Jim Baugh, eBay's top security executive.   (¶¶ 7(f), (g)).

For approximately 20 years, Ina Steiner had been a reporter and editor of an online newsletter that covered eBay and other ecommerce businesses ("the Newsletter").   Her husband, David, was the Newsletter's publisher.   The Steiners lived in Natick.   (¶¶ 8, 9).[1]

Senior executives at eBay, including its CEO and Chief Communications Officer ("CCO"), frequently took issue with the content of the Newsletter's coverage of eBay.   In late May 2019, for example, the Newsletter published an article regarding the CEO's commission of a replica New York City pub, Walker's West, on eBay's campus.   The article asked whether the company's shareholders would question the expense in light of the company's financial performance.   A frequent online critic of eBay—"Fidomaster"—commented on the story over

---

[1]The Steiners have identified themselves publicly in this and a related civil matter.

Twitter, linking to the Newsletter's coverage.   (PSR ¶ 16).

Days later, in the wake of the article, Baugh directed the defendant to fly to Boston.   On June 8, 2019—the same day that Baugh "crank" called the Steiners at 1:30 a.m. from a blocked number—the defendant drove to the Steiners' home, walked on to their property, and used a permanent marker to write "Fidomaster"—the online critic's name—on the Steiners' fence. (PSR ¶ 16).   In an attempt to identify Fidomaster, Baugh later dispatched the defendant and Zea to the Las Vegas airport to film arriving passengers on a particular flight from Georgia.   (PSR ¶ 21).

On August 1, 2019, after the Newsletter published an article about a lawsuit between eBay and Amazon, the CEO messaged the CCO regarding Ina:   "if we are ever going to take her down..now is the time."   The CCO shared the CEO's text with Baugh, who asked, "Let me ask you this, do we need her entire site shut down?   I'm not fucking around with her[] anymore." The CCO replied, "Amen. I want her DONE."   Baugh asked if the CEO "said to burn her to the ground correct?," to which the CCO replied, "She is a biased troll who needs to get BURNED DOWN."   Baugh continued, "If I can neutralize her website in two weeks or less, does that work for you," to which the CCO replied, "I want to see ashes.   As long as it takes.   Whatever it takes".   (PSR ¶ 21).

Beginning on or about August 5, 2019, Baugh, the defendant, Cooke, and other eBay employees and contractors (including Stephanie Popp, David Harville, Veronica Zea, and Stephanie Stockwell) agreed to harass and intimidate the Steiners, and to place them under surveillance with the intent to harass and intimidate them, through repeated and hostile Twitter messages, deliveries of unwanted—and in some instances disturbing—items to the Steiners'

home, and travel to Massachusetts to conduct physical surveillance.   The harassment, which took place between approximately August 6, 2019 and on or about August 22, 2019, caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to both of the Steiners.   (PSR ¶ 11).   The purposes of the harassment and intimidation campaign included, among others, distracting the Steiners from publishing the Newsletter, altering the Newsletter's coverage of eBay, and gathering information, including the identity of Fidomaster, that eBay could use to discredit the Steiners, the Newsletter, and Fidomaster.   (PSR ¶ 12).

The defendant's role began with his attendance—along with Baugh, Popp, and Cooke—at an August 6, 2019 meeting at eBay headquarters.   Baugh showed some of the CEO and the CCO's text messages to the group.   Baugh, Popp, Cooke, and the defendant planned to send increasingly harassing messages to the Steiners that would culminate in the doxing of the Steiners—the publication of their personal information over the internet.   (PSR ¶ 23).   The defendant thereafter participated in a WhatsApp group with Baugh, Popp and Cooke that concerned the proposed content of the harassing messages, some of which the defendant drafted or approved.   The co-conspirators originally tasked Gilbert with approaching the Steiners at the peak of the harassment to offer eBay's assistance, in order to earn the Steiners' trust and assistance in identifying Fidomaster.   (PSR ¶ 14).

The defendant initially knew generally that Baugh and members of eBay's security team were coordinating deliveries of packages to the Steiners' home, and some of the harassing messages referenced those deliveries.   (PSR ¶ 23).   The defendant also knew that Baugh, Zea, and Harville intended to travel and later did travel to Boston to surveil the Steiners in their home and community.   (PSR ¶¶ 15, 47).   On or about August 20, 2019, Baugh sent Popp, Gilbert, and

Cooke a video clip from the movie *Old School*, a film in which a character announces at a stranger's front door that he has arrived for a "gangbang". Baugh noted "this has been the Steiners house for the past 5 nights." The defendant—the retired police captain—replied, "Lol!!! Awesome." (PSR ¶ 74).

When the NPD connected Zea and Harville to the physical surveillance of the Steiners, the defendant worked with his co-conspirators to obstruct the NPD's investigation. He did so by reaching out to the NPD on behalf of eBay, identifying himself as a former officer, and making false statements about Zea and Harville's reasons for being in the Boston area. (PSR ¶ 107). He also contacted the Steiners and offered assistance, by then in an effort to distance eBay from the harassment and surveillance. Over the WhatsApp group chat, and now more fully aware of the extent of the harassment campaign, Gilbert kept tabs on the NPD investigation as it unfolded and brainstormed with Baugh, Popp, and Cooke about ways to interfere with it. (PSR ¶ 15). For example, on August 21, 2019, after Gilbert learned that NPD detectives had gone looking for Zea—she had rented one of the surveillance vans—Gilbert suggested a false alibi for Zea: "[Zea] was driving around looking for antiques. Must have got lost and they picked up her plate by accident." (PSR ¶ 83). Similarly, the defendant proposed to Baugh, Cooke and Popp bringing "dossiers" on the Steiners to the defendant's meeting at the NPD: "Definitely want to make them look crazy". (PSR ¶ 82). The defendant later deleted WhatsApp messages that evidenced the existence of the conspiracy. (PSR ¶¶ 115, 127).

II.    The Guideline Sentencing Range

The PSR correctly calculates the defendant's offense level at 21 and assigns him to Criminal History Category I. The advisory Guidelines sentencing range is 37 to 46 months.

Since the drafting of the PSR, however, the Sentencing Guidelines were amended to add a potential reduction of two levels for offenders who, like the defendant, do not receive any criminal history points.   USSG § 4C1.1(a)(1).   That amendment, however, does not apply to any defendant who "use[d] … credible threats of violence in connection with the offense."   *Id.* § 4C1.1(a)(3).

In this case, the defendant <u>personally</u> employed credible threats of violence. Specifically, on August 20, 2019, the defendant drafted a WhatsApp message to be sent to Ina Steiner toward the end of the harassment campaign, just in advance of the defendant introducing himself to the Steiners as an ally from eBay who could help with the harassment—a gambit the government has described as the "White Knight" strategy.   The defendant proposed a plan:

> [We] introduce a crazy 3rd party who joins with, "Ina focus on something else and stop f[***]ing with our customers!   I don't want to see another f***ing post about ebay.   Leave our businesses alone!!!!   When she doesn't respond, then this, 'What the fuck?!?!   **Hey what was Ina's home address again?   I guess I have to pay her a visit.**   The Tui [Twitter account] can send … their home address again. … This sets up my contact with them."

(PSR ¶ 71) (emphasis supplied).   The following day, co-defendant Stephanie Popp posted publicly the very language that defendant Gilbert had drafted, including the suggestion that the writer would have to "pay Ina a visit."   (PSR ¶ 86).   The Steiners credibly perceived the posts the defendant drafted as threats of violence, as would any objective observer.   *See* David Steiner, Victim Impact Statement, *United States v. Cooke*, 20-CR-10126-ADB ("A stack of baking sheets was leaning against our back door so that we could hear anyone trying to break into our home.").   The Zero-Pointer Offender adjustment accordingly should not apply.[2]

---

[2]To the extent the defendant objects to the calculated two-level enhancement for a "pattern of

The defendant's criminal history category is properly calculated at I and his advisory Guidelines Sentencing Range at 37 to 46 months.

III.     <u>The Requested Sentence</u>

Judge Saris sentenced defendant Baugh—the architect of the campaign—to 57 months' imprisonment and defendant Harville to 24 months' imprisonment.   Judge Burroughs sentenced the defendant's former police colleague, Cooke, to 18 months' imprisonment, with 12 months' home confinement to follow.   This Court sentenced co-defendant Popp to a year's custody, and co-defendants Zea and Stockwell to probationary terms for reasons stated in those sentencings.

There is clearly no satisfactory outcome in this case.   The defendant and his co-conspirators engaged in an extreme and unprecedented campaign to harass a pair of journalists in an effort to change the content of their reporting ("I don't want to see another f***ing post about ebay"), and he then used decades of police training and experience to attempt to throw the NPD off the trail as it worked on behalf of the increasingly desperate victims.   (PSR ¶ 101 ("I'm going to push the idea that ebay is a massive company and have no interest in the Steiners.   The idea we would send sh*t to their house is ridiculous")).   While prison is the appropriate punishment for the defendant's crime, a prison sentence would not be appropriate

---

activity involving stalking, threatening, harassing, or assaulting the same victim" under USSG § 2A6.2(b)(1)(E), PSR ¶ 133, the Court has applied the so-called pattern enhancement in each of its three prior sentencings in this matter.   *See*, *e.g.*, Sent. Tr. for Stephanie Stockwell, Oct. 11, 2022 at 9 ("The Court so rules, the objection is overruled, and the enhancement is part of the calculation here").   In light of the parties' joint recommendation for a non-custodial sentence, the Court need not re-examine its earlier decision.   Judge Saris, in the *Baugh* and *Harville* matters, similarly applied the pattern enhancement.   Judge Burroughs, in the *Cooke* matter, took no position on its applicability.   (PSR ¶ 133 n.5).

given the defendant's current prognosis.   The best the Court can do under these circumstances is to impose a sentence that acknowledges the hellish ordeal the defendant put the victims through, and the disgrace he thereby brought on himself, while also, in these unusual circumstances, demonstrating compassion for his grave personal circumstances.

IV.    Conclusion

For the reasons it has suggested above, the United States requests that the Court impose a sentence of time served, one year of supervised release with the special condition that the defendant have no contact with either Ina or David Steiner, a $20,000 fine, and the required $200 special assessment.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

/s/Seth B. Kosto
SETH B. KOSTO
Assistant U.S. Attorney

July 12, 2024

CERTIFICATE OF SERVICE

I hereby certify that a copy of this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/Seth B. Kosto
SETH B. KOSTO
Assistant U.S. Attorney

July 12, 2024

9